UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LIBERTY MUTUAL FIRE INSURANCE
COMPANY,                                                                    Civil Action No.

                                      Plaintiff,

                 -against-                                                     **COMPLAINT**

AXIS INSURANCE COMPANY,

                                   Defendant.
------------------------------------------------------------x

**M A D A M S / S I R S:**

        Plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY ("Liberty Mutual", by its attorneys, JAFFE & ASHER LLP, as and for its Complaint against defendant AXIS INSURANCE COMPANY ("Axis"), alleges as follows:

### JURISDICTION AND VENUE

        1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000.00 exclusive of costs.

        2.     At all times hereinafter mentioned, Liberty Mutual was, and still is, a stock insurance company organized under the laws of the State of Wisconsin, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

        3.     At all times hereinafter mentioned, Liberty Mutual was, and still is, an insurance company duly authorized to conduct business within the State of New York.

        4.     At all times hereinafter mentioned, Axis was, and still is, a stock insurance company organized under the laws of the State of Illinois, with its principal place of business located at 10000 Avalon Blvd., Suite 200, Alpharetta, GA 30009.

5. At all times hereinafter mentioned, Axis was, and still is, an insurance company duly authorized to conduct business within the State of New York.

6. This Court has venue over this matter pursuant to 28 U.S.C. § 1391; a substantial part of the events or omissions giving rise to the claim occurred in this District.

## SUBSTANTIVE ALLEGATIONS

7. On or about December 26, 2017, Thomas Messina ("Messina") commenced an action entitled Thomas Messina v. Motorola Solutions, Inc., Cushman & Wakefield, Inc. Tractel, Inc., The City of New York, The New York City Police Department (NYPD), Fire Department of New York City (FDNY), New York City Department of Information Technology and Telecommunications (NYCDOITT), The New York City Department of Citywide Administrative Services (NYCDCAS), The Public Safety Answering Center II ("PSAC II"), Hutch Metro Center 1, LLC, Hutch Management, LLC, and Hutch Realty Partners, LLC, Index No. 36374/2017, in the Supreme Court of the State of New York, County of Bronx (the "2017 Action").

8. In the 2017 Action, Messina alleges that, on or about October 13, 2016, he was caused to fall to the ground due to an unsecured, misleveled, uneven, dangerous and hazardous portable ramp existing at premises located at 350 Marconi Street, Bronx, NY (the "Premises").

9. On or about October 7, 2019, Messina commenced an action entitled Thomas Messina v. Tishman Construction Corporation, Tishman Technologies Corporation, Tishman Construction Corporation of New York, Hutch 40 Manger LLC, Hutch 40 LLC, Simone Development Company, L.L.C. and Simone Development Corporation, Index No.

31747/2019, in the Supreme Court of the State of New York, County of Suffolk (the "2019 Action").

10. On or about July 17, 2020, Motorola Solutions, Inc. ("Motorola") impleaded H&L Electric, Inc. ("H&L") into the 2017 Action by the filing of a Third-Party Summons and Third-Party Complaint.

11. By Decision and Order dated October 9, 2020, the Supreme Court, Bronx County, consolidated the 2017 Action and the 2019 Action for all purposes (collectively, the 2017 Action and the 2019 Action shall be referred to herein as the "Consolidated Action").

12. In the Consolidated Action, Messina alleges that he suffered bodily while working as an employee of H&L on a construction project located at 350 Marconi Street, Bronx, NY (the "Premises").

13. In the Third-Party Complaint, Motorola alleges that, on or about December 3, 2015, Motorola and H&L entered into a written contract, wherein H&L agreed to perform certain services, including the installation of antennas, cabling, and grounding on the rooftop of the Premises.

14. In the Third-Party Complaint, Motorola alleges that H&L exercised control over the place of the occurrence, the work being performed there, and the work being performed there by Messina.

15. In the Third-Party Complaint, Motorola alleges that Messina's alleged accident arose out of the performance of work and/or services of H&L.

16. The Third-Party Complaint alleges four causes of action against H&L, including for contractual indemnification, common law indemnification, and contribution.

17. A 50-H Hearing of Messina was conducted on June 15, 2017.

18. At the 50-H Hearing, Messina testified that at the time of the accident, he was working for H&L and that H&L was the subcontractor of Motorola, the general contractor.

19. At the 50-H Hearing, Messina testified that H&L was "Pulling antenna cables for the antennas on the roof, and we were doing a bunch of other stuff, too," and that the building at the Premises is a 911 command center.

20. At the 50-H Hearing, Messina testified that he had walked on the subject ramp that was located on the roof of the premises about five times prior to the accident, and that it was loose and/or it moved.

21. At the 50-H Hearing, Messina testified that he had complained to a H&L foreman about the ramp and that other H&L employees also complained about the ramp moving.

22. Motorola and H&L, as "Subcontractor" or "Supplier", entered into a written contract as of December 3, 2015 comprised of Motorola Standard Service Terms and Conditions, and the Statement of Work (collectively, the "H&L Contract), whereby H&L agreed to perform certain work and services, including the installation of antennas, cabling, and grounding on the rooftop, two levels of elevated antenna platform, and two doghouse and cable chase locations at PSAC2, at the Premises.

23. The H&L Contract provides, in pertinent part, as follows:

> 11.1 Supplier will maintain in effect, at its own expense, the following minimum types and minimum amounts of insurance … (c) Commercial General Liability (CGL) insurance, including personal injury extension, products/completed operations, independent contractor endorsement, and broad form contractual liability, $1,000,000 combined single limit; … (e) Umbrella/Excess Liability insurance, $3,000,000 per occurrence. The CGL insurance will name or list Motorola as an additional insured …

4

24. In compliance with the H&L Contract, H&L obtained a Commercial General Liability policy, No. MNP794440-16, with a policy period from June 2, 2016 to June 2, 2017, issued by Axis to H&L, as a Named Insured (the "Axis Policy").

25. The Axis Policy has an each occurrence limit of $2 million, a general aggregate limit of $4 million, and a total policy general aggregate limit of $10 million.

26. The Axis Policy includes an endorsement entitled "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" (the "AI Endorsement").

27. The AI Endorsement provides, in relevant part, as follows:

> **A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.** Your acts or omissions; or
>
> **2.** The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

28. The schedule to the AI Endorsement provides as follows:

> Any person or organization that you are required by written contract to name as an additional insured.

29. The Axis Policy contains an endorsement entitled "Primary and Noncontributory – Other Insurance Condition", which provides, in pertinent part, as follows:

> The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:
>
> **Primary And Noncontributory Insurance**
> This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

> **(1)** The additional insured is a Named Insured under such other insurance; and
>
> **(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

30. To the extent the endorsement entitled "Primary and Noncontributory – Other Insurance Condition" does not apply, the Axis Policy has a fallback primary "Other Insurance" provision that provides as follows:

> **a. Primary Insurance**
> This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

31. Liberty Mutual issued a Commercial General Liability policy, No. TB2-641-005169-076, with a policy period from July 1, 2016 to July 1, 2017, to Motorola as a Named Insured (the "Liberty Mutual Policy").

32. The Liberty Mutual Policy has an excess "Other Insurance" provision as compared to the Axis Policy, which provides as follows:

> **b. Excess Insurance**
>
> **(1)** This insurance is excess over:
>
> ***
>
> **(b)** Any other primary insurance available to you [Motorola] covering liability for damages arising out of the premises or operations ... for which you have been added as an additional insured.

33. No portion of "b. below applies", as that phrase is used in the AXIS Policy applies to the Underlying Action as compared to the Liberty Mutual Policy.

34. The AXIS Policy applies primary to the Liberty Mutual Policy for the claims alleged against Motorola in the Underlying Action.

6

35. By letter dated November 28, 2018, Gordon & Rees Scully Mansukhani LLP, counsel for Motorola in the Underlying Action, tendered the defense and indemnity of Motorola to H&L, based both on contractual indemnification and as an additional insured under H&L's insurance policy.

36. Upon information and belief, H&L or its counsel forwarded the November 28, 2018 tender letter to AXIS.

37. By letter dated November 20, 2019 to Gordon & Rees Scully Mansukhani LLP, the law firm known as Kaufman Borgeest & Ryan LLP advised that it was counsel to AXIS and that "AXIS is in receipt of your various correspondence demanding a defense and indemnification for your client Motorola Solutions, Inc. ("Motorola") as a purported additional insured under H&L's policy.

38. The November 20, 2019 letter advised that "AXIS remains unable to conclude that it has a coverage obligation to Motorola as an additional insured, at least at this time. AXIS, therefore, can neither accept nor deny coverage to Motorola at this time. Rather, it is AXIS' position that it does not have sufficient information upon which to conclude that Motorola is entitled to additional insured status for the purpose of this matter. AXIS remains committed to investigating this question and to further evaluating Motorola's tender if and when additional facts are provided."

39. The November 20, 2019 letter failed to consider the duty to defend standard applicable under New York law.

40. Upon information and belief, AXIS has been defending H&L as a third-party defendant in the Underlying Action.

41. Upon information and belief, AXIS has and had access to all discovery conducted in the Underlying Action.

42. By letter dated August 10, 2023, the law firm of Jaffe & Asher LLP, as counsel for Liberty Mutual, wrote to Kaufman Borgeest & Ryan LLP and again demanded that AXIS assume the defense and indemnity of Motorola for the Underlying Action, explaining in detail the basis for the tender.

43. AXIS failed and refused to respond to the August 10, 2023 letter.

44. As a result of AXIS's breach of its duty to defend, Liberty Mutual has been forced to drop down and provide a defense to Motorola for the Underlying Action.

## AS AND FOR A FIRST CLAIM FOR RELIEF

45. Liberty Mutual repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "44" of this Complaint as if more fully set forth herein.

46. Motorola qualifies as an additional insured under the AXIS Policy for the claims alleged in the Underlying Action.

47. AXIS owes Motorola a duty to defend and indemnify for the claims alleged in the Underlying Action.

48. Although duly demanded, AXIS has failed and refused to provide a primary defense and indemnification to Motorola for the claims alleged in the Underlying Action.

49. Liberty Mutual seeks a determination of its rights with regard to the AXIS Policy, including a declaratory judgment that AXIS was and is required to defend and indemnify Motorola for the Underlying Action under the AXIS Policy and that such coverage applies on a primary basis before coverage under the Liberty Mutual Policy applies to Motorola.

50. Liberty Mutual has no adequate remedy at law.

## AS AND FOR A SECOND CLAIM FOR RELIEF

51. Liberty Mutual repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "50" of this Complaint as if more fully set forth herein.

52. As a result of AXIS's failure to acknowledge that it owes a primary duty to defend Motorola, Liberty Mutual has been required to pay for Motorola's defense for the Underlying Action.

53. As a result of AXIS's failure to acknowledge its primary duty to defend Motorola for the Underlying Action, Liberty Mutual has incurred substantial attorneys' fees and other costs to defend Motorola.

54. As of June 2023, Liberty Mutual has paid the sum of $145,685.36 for the defense of Motorola for the Underlying Action, and the amount of defense costs paid keeps increasing as the Underlying Action continues to be litigated.

55. Although duly requested, AXIS has failed and refused to acknowledge its primary coverage obligation and to reimburse Liberty Mutual for costs incurred to defend Motorola for the Underlying Action.

56. As a result of the foregoing, Liberty Mutual is entitled to a money judgment against AXIS in an amount equal to what Liberty Mutual has incurred and will incur to defend Motorola for the Underlying Action, in an amount to be determined by the Court, plus interest.

**WHEREFORE**, plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY demands judgment as follows:

9

1. On the First Claim for Relief, a declaratory judgment determining the respective rights and obligations of plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY and defendant AXIS INSURANCE COMPANY with respect to their liability insurance coverage obligations for Motorola for the Underlying Action, including a declaratory judgment that defendant AXIS INSURANCE COMPANY is required to defend and indemnify Motorola for the Underlying Action, and that such coverage for Motorola applies on a primary basis before coverage under the Liberty Mutual Policy applies to Motorola;

2. On the Second Claim for Relief, a money judgment in favor of plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY and against defendant AXIS INSURANCE COMPANY, in an amount to be determined by the Court, plus interest; and

3. Granting plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY recovery of the costs and disbursements of this action, together with such other and further relief as this Court deems just and proper.

Dated:  White Plains, New York
        November 15, 2023

Yours, etc.,

JAFFE & ASHER LLP

By: _____
Marshall T. Potashner, Esq.
Attorneys for Plaintiff
LIBERTY MUTUAL FIRE
INSURANCE COMPANY
445 Hamilton Avenue, Suite 405
White Plains, New York 10601
(212) 687-3000